# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge John L. Kane

Civil Action No. **06-cv-02262-JLK** (consolidated with Civil Action No. 07-cv-2063-JLK)

**RENEE ATWELL,**
**VIVIAN BRADLEY,**
**TERRY LEE, and**
**YVETTE MARTINEZ HOCHBERG,**

        Plaintiffs,

v.

**PATRICIA GABOW, in her individual and official capacity as Chief Executive Officer and Medical Director of Denver Health and Hospital Authority, and**

**DENVER HEALTH AND HOSPITAL AUTHORITY,**

        Defendants.

---

Civil Action No. **07-cv-2063-JLK**

**ODIN GOMEZ,**
**MEKELA RIDGEWAY,**
**CATHIE GORDON, and**
**KATIE MOORE,**

        Plaintiffs,

v.

**PATRICIA GABOW, in her individual capacity and in her official capacity as Chief Executive Officer and Medical Director of Denver Health and Hospital Authority,**

**GREG ROSSMAN, in his individual capacity and in his official capacity as Chief Human Resources Officer of Denver Health and Hospital Authority,**

**WENDY ALEXANDER, in her individual capacity and in her official capacity as Human Resources Director of Denver Health and Hospital Authority, and**

**DENVER HEALTH AND HOSPITAL AUTHORITY,**

        Defendants.

## ORDER ON MOTIONS TO DISMISS AND ORDER TO SHOW CAUSE

Kane, J.

Six former and two current employees assert federal and state employment discrimination and related civil rights claims against Denver Health and Hospital Authority ("Denver Health") and various Denver Health officials and management level employees. Each claims to have suffered one or more adverse employment actions – including being passed over for rehiring, being supervised by less qualified individuals, being moved to less desirable office space or positions, or being disciplined unfairly – either on the basis of their race or ethnicity or in retaliation for complaining about discriminatory practices against non-whites. Plaintiffs contend these actions were the result of a policy of intentional discrimination maintained by Denver Health and its governing official in the terms and conditions of employment for non-white employees, rendering both Denver Health and each of the individual Defendants jointly and severally liable for Plaintiffs' injuries under 42 U.S.C. §§ 1981 and 1983. The four *Atwell* Plaintiffs also assert individual claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and state law analogs at Colo. Rev. Stat. §§ 24-34-402 and 25-29-107. Defendants move to dismiss. I grant the Motions in part and deny them in part.

## I. BACKGROUND AND PROCEDURAL HISTORY.

The procedural history of this case was set forth in my February 28, 2008 Order Denying Motion for Class Certification (Doc. 74), and I will summarize it only briefly here. Plaintiffs brought their claims in two separate class actions. The first began as an individual action by Plaintiff Renee Atwell filed in November 2006, but was amended in February 2007 to add

Plaintiffs Bradley, Lee and Martinez and to assert claims on behalf of "50-250" similarly situated (non-white) current and former Denver Health employees. The second (*Gomez et al. v. Gabow et al.*) was filed in state court during the pendency of Defendants' Motions to Dismiss the *Atwell* action by four members of the *Atwell* case's putative class. Defendants removed *Gomez* to federal court, where it was originally assigned to Judge Krieger. Judge Krieger reassigned it to me, and I consolidated *Gomez* with *Atwell* for purposes of discovery (Doc. 43) and designated *Atwell* as lead. Shortly thereafter, Defendants filed their Motion to Dismiss the *Gomez* class action.

The Motions to Dismiss challenged both the viability of the named Plaintiffs' individual claims as well as those claims each purported to bring on behalf of the "50-250" non-white current and former Denver Health employees whom Plaintiffs posited had suffered similar acts of discriminatory treatment.[1] Concerned the class claims were asserted as an end-run to weaknesses in the representative Plaintiffs' claims and because Plaintiffs relied on class action jargon to obfuscate those weaknesses, I ordered the class certification issue decided first. Plaintiffs filed a formal Motion for Class Certification (Doc. 58) on January 7, 2008, which I denied (Doc. 74) on February 28, 2008. The actions are before me now on ***Defendants' Motion to Dismiss First Amended Complaint*** in 06-cv-2262-JLK (Doc. 17) and ***Defendants' Motion to Dismiss Amended Complaint Filed by Plaintiffs Gomez, Ridgeway, Gordon, and Moore in Consolidated Case 07-cv-2063*** (Doc. 45). Based on my ruling on the class certification issue, I

---

[1]    Specifically, the *Atwell* and *Gomez* Plaintiffs sought to assert claims on behalf of themselves as well as "all past and present non-white DH employees who have been or continue to be discriminated against on the basis of their race . . . or ethnic group in the terms and/or conditions of their employment, including, but not limited to, recruitment, selection, hiring, training, promotion, retention, assignment of duties, granting of rights and benefits, or any other personnel action." *Atwell* Am. Compl. (Doc. 13) ¶ 24, *Gomez* Am. Compl. ¶ 26.

limit my focus on these Motions to the viability of Plaintiffs' individual claims for relief against Defendants, and not their claims asserted on behalf of anyone else.

## II.  DISCUSSION.

Plaintiffs' claims fall into two general categories: (1) individual employment discrimination claims for disparate treatment and retaliation against Denver Health under Title VII and Colorado state law analogs (asserted by the *Atwell* Plaintiffs only); and (2) sweeping civil rights claims against Denver Health as well as various Denver Health officials in their "individual" and "official" capacities for violating their rights to equal benefit of the laws secured by 42 U.S.C. § 1981 and for depriving them of their rights secured by 42 U.S.C. §§ 1981, 1983 and 1988 in violation of 42 U.S.C. § 1983.

I review the operative Complaints[2] under the standards set forth under Fed. R. Civ. P. 12(b)(6).  Plaintiffs' claims suffer numerous infirmities both structurally as a matter of law and factually in terms of the sufficiency of the allegations to support them.  Particular weaknesses are reflected in misapprehensions regarding the legal standards for individual (supervisor) and municipal liability under §§ 1981 and 1983 under *Monell v. New York City Dept. of Social Services*, 436  U.S. 658, 690-91 (1978),[3] the *Atwell* Plaintiffs' failure to comply with

---

[2]     The operative Complaints are the Amended Complaint (Doc. 13), filed February 16, 2007 in 06-cv-2262-JLK (the "*Atwell* Complaint") and the Amended Complaint, first filed in state court on September 12, 2007, and then removed to federal court on October 3, 2007, in 07-cv-2063 (the "*Gomez* Complaint").

[3]     Under *Monell*, neither Denver Health nor the individual Defendants acting in their "official" capacities can be held liable for the discriminatory acts of managers/supervisors or other subordinates independently of § 1983's requirement that these subordinates acted pursuant to an official policy or custom so entrenched that their actions may be fairly attributable to the entity itself.  436 U.S. at 691.  *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23, 127 (1988)(local governmental entities are "persons" against whom liability can be asserted under § 1983, but may be called to task only for their own "policies" or firmly entrenched "customs" or

jurisdictional prerequisites for their Title VII claims or to recognize the inapplicability of the

Colorado statutory provisions on which their state law claims are premised, and the failure

generally, of Plaintiffs' factual allegations to support their §§ 1981 and 1983 claims. Despite

having been on notice regarding most, if not all, of these infirmities since I raised them in my

May 2007 Order setting the *Atwell* Amended Complaint for oral argument (Doc. 22), Plaintiffs'

response has been to augment allegations that were already deficiently vague and conclusory

with additional vague and conclusory allegations and to cite, often with no basis whatever,

perfunctory lines from cases having little or nothing to do with the issues raised.

The essence of Plaintiffs' claims remains the assertion that each suffered incidents of

perceived race discrimination at the hands of unnamed managers or supervisors and, because

these incidents were the result of an intentionally discriminatory employee management system

"developed," "implemented," or "condoned" by Defendants, that both Denver Health and

Defendants Gabow, Rossman and Alexander should be held jointly and severally liable for those

acts of discrimination. Under the Supreme Court's recent clarification of Rule 12(b)(6)

standards and the related pleading requirements of Rule 8(b), Plaintiffs' allegations fall short.

*See Bell Atlantic Corp. v. Twombly*, _ U.S. _, 127 S.Ct. 1955, 1967-68 (2007)(retiring the long

misused adage that dismissal is appropriate only if the court determines "beyond doubt" that "no

set of facts" exists to support a plaintiff's claims and holding the onus is on the proponent of a

claim to allege actual facts giving rise to plausible claims for relief, rather than on the court to

assess whether "any set of facts" could support them.)

---

practices that violate the constitution, not for the unconstitutional acts of their individual
employees). Accordingly, Plaintiffs' § 1981 claims against Denver Health and any Denver Health
employee "acting in [his or her] official capacity" are analytically indistinct from Plaintiffs' § 1983
claims and do not constitute separate causes of action.

### A. *The Amended Complaints.*

Plaintiffs' individual allegations of discriminatory treatment are as follows:

• Renee Atwell:  African-American psychologist Renee Atwell claims she was discriminated and retaliated against on the basis of her race after complaining about being moved from an office to a cubicle while she was out for an extended period after carpal tunnel surgery and being subjected to supervision and evaluation by an unqualified non-professional white woman holding no more than a high-school diploma.  Am. Compl. (Doc. 13) ¶¶ 39-46.  Atwell contends the hostile treatment ratcheted up after she returned from spine surgery.  Atwell claims she was required to work without an office, was threatened with termination for not being physically able to become CPR certified, and was subjected to continued supervision by unqualified persons, all of which precipitated her filing an EEO complaint.  *Id.* at 47-57.  Atwell contends that despite the EEO's recommendation that she be given an office, she never was.  *Id.* at 58.  Moreover, unfounded complaints about her work began to take hold and Atwell began receiving negative evaluations.  ¶ 59.  Atwell claims she found the lack of an office and the continued supervision of her work by unqualified co-workers "intolerable" and resigned her position effective December 31, 2005.

• Vivian Bradley:  African-American Registered Nurse Practitioner (RNP) Vivian Bradley claims she was discriminated against on the basis of race when a less-qualified white woman, an RN, was assigned to supervise her.  Am. Compl ¶¶ 69-74.  Bradley also contends she was threatened with termination after she questioned the adequacy of resources allocated to her clinic, which was located in a poor non-white neighborhood.

*Id.* at ¶ 75.  Bradley was ultimately fired for abandoning her job after her car broke down and she was unable to report to work, and claims her termination was racially motivated because no similarly-situated white RNP had been fired for job abandonment under similar circumstances.  *Id.* ¶¶ 76-78.

- <u>Terry Lee</u>:  Registered Nurse Terry Lee claims she was discriminated against on the basis of race when she was disciplined for breaching patient confidentiality by accessing her own child's medical records while at work.  Lee contends no other similarly-situated Denver Health employees had been disciplined for reviewing their children's medical records, and contends she was treated "more harshly" and effectively demoted after she complained.  When Lee applied for a new job opening at Denver Health, a less qualified white person was hired.  *Id.* ¶¶ 80-95.

- <u>Dr. Yvette Martinez Hochberg</u>:  Dr. Martinez Hochberg claims she was discriminated against both as a Latina and a member of the Jewish faith after she complained about unwelcome comments regarding her racial and ethnic background.  Hochberg claims she was transferred to a different Denver Health clinic she considered a demotion where she was "black balled" and subjected to a hostile work environment she found intolerable and resigned.  *Id.* ¶¶ 98-109.

- <u>Odin Gomez</u>:  Gomez, a Mexican-American former human resources assistant at Denver Health, claims he was retaliated against after informing Defendants that the "Talent Plus" selection and retention policy was having an adverse impact on non-white job applicants, including being told he could not speak Spanish with co-workers, being disciplined for the way he completed paperwork, and ultimately by being terminated and placed on the

ineligible for re-hire list for using a co-worker's device to access the employee parking lot. (Gomez Am. Compl. ¶¶ 35-47.)

- Mekela Ridgeway: Also a former human resource assistant of Mexican-American heritage, Ms. Ridgeway claims she complained to Defendant Alexander that she "was treating white co-workers more favorably than her, e.g. talking to her in a demeaning and rude fashion" and that Alexander retaliated against her complaints of racial discrimination by prohibiting her from speaking Spanish to co-workers and telling her to"get off the bus" if she did not like Talent Plus. Am. Compl. ¶¶ 54-57. Ridgeway also claims she was retaliated against by being moved from her ergonomically adjusted work location to a less desirable place without such accommodation. Ridgeway had previously been injured by a falling elevator at the workplace and alleges these actions put her in the position of having to "quit her job or be fired because she would not be able to perform her job duties due to extreme physical pain." *Id.* at ¶¶ 58-59. Ridgeway ultimately resigned, claiming her resignation was actually a constructive discharge. *Id.* ¶ 60.)

- Cathie Gordon: African-American Denver Health nursing administrator Cathie Gordon alleges she was paid less than white co-workers and that, while on medical leave, Denver Health "manipulated" her personnel records to show her working fewer hours than required to receive benefits. (*Id.* ¶¶ 64-69.)

- Katie Moore: African-American former programs manager Katie Moore left Denver Health in 2001 and alleges she was subjected to "Talent Plus" when she applied for rehire and was rejected on the basis of her race. (*Id.* ¶¶ 71-80).

To support their assertion that Denver Health (and individually-named Defendants acting

in their "official capacities") should be held liable for these incidents under *Monell* and *Praprotnik*, Plaintiffs collectively allege the following:

•   Denver Health Executive Patricia Gabow has "adopted and implemented" on behalf of Denver Health a personnel management system wherein managers and supervisors are "train[ed] and encourage[d] to ignore objective performance criteria and to look for the 'right person in the right seat on the bus' and to 'put off the bus' those persons subjective criteria suggest are not compatible" (Atwell Am Compl., ¶ 11; Gomez Am. Compl. ¶ 12);

•   Gabow has stated "she believes in the philosophy that 'it's not about training, it's about DNA'" (Atwell Compl. at ¶ 11);

•   Gabow "developed and implemented official personnel policies and practices that resulted in systematic discrimination against non-white employees on the basis of their race, color and/or ethnic group, and/or in retaliation for complaining about illegal discrimination" (*Id.* ¶ 127);

•   Gabow, Rossman and Alexander "were aware of" and "approved, condoned, and/or ratified the illegal discriminatory conduct of DH managers/supervisors and/or purposely ignored their illegal discriminatory conduct" and their "failure to act caused Plaintiffs to suffer harm"(Atwell Compl. ¶ 127-29; Gomez Compl. ¶ 13);

•   the "abridgments [sic] of employment opportunities" Plaintiffs' suffered "are part of a general policy or practice of illegal employment discrimination on the basis of race that has existed at DH throughout the relevant time."  (Gomez Compl. ¶ 81);

•   Denver Health "has pursued policies or practices on a continuing basis that have denied or restricted job opportunities to qualified non-white job applicants and employees" (*Id.*

at ¶ 82); and

- At least one "fully qualified non-white highly skilled professional health care provider" was terminated using the "right person . . . right seat" approach. (Atwell Compl. ¶ 11.)

For their relief, Plaintiffs seek to hold Defendants liable, "jointly and severally," for all damages resulting from their discriminatory actions, specifically including "damage to [their individual] reputation[s], anxiety, personal indignity, humiliation, embarrassment, emotional distress, and lost wages and benefits." *See Atwell* Compl. ¶¶ 67 (Atwell), 79 (Bradley), 97 (Lee), 109 (Hochberg); *Gomez* Compl. ¶¶ 47 (Gomez), 62 (Ridgeway), 69 (Gordon), and 80 (Moore). Plaintiffs seek pre- and post-judgment interest on those monetary damages, as well as "punitive" and "liquidated" damages, and "other statutory penalties." *See id.*

### B. Applicable Standard - Twombly.

Plaintiffs invoke the standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), to argue the dismissal of their claims under Rule 12(b)(6) is inappropriate unless it appears "beyond doubt that [they] are unable to prove any set of facts that would entitle them to relief." *See e.g.*, Pls.' Request to Supplement Response to Defs' Mot. Dismiss (Doc. 21) at 3. Even under this narrow view of the Rule 12(b)(6) standard, Plaintiffs' allegations largely fail to state viable causes of action – particularly for individual (supervisor) and municipal liability under 42 U.S.C. §§ 1981 and 1983. Under *Twombly*, however, their failings are even more conspicuous.

In *Twombly*, the Supreme Court engaged in a lengthy discussion of *Conley v. Gibson* and expressly rejected the "no set of facts" standard urged by Plaintiffs here. *See Twombly*, 127 S. Ct. at 1968-69. On a "focused and literal reading" of that standard, the Court reasoned, "a

wholly conclusory statement of claim should survive a motion to dismiss whenever the pleadings left open the *possibility* that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1968 (emphasis mine). Explaining that this was not the Court's holding in *Conley* and bemoaning the misapplication of the standard since its inception, Justice Souter concluded that now, "[after] 50 years, this famous observation has earned its retirement." *Id.* at 1969. What is required of a well-plead complaint are actual, existing facts, not promises of future facts or recitations of elements or legal conclusions parading as fact, from which a *plausible*, not theoretically possible, claim for relief may be inferred. *See id.*

Of course, the standard remains a liberal one: All allegations in a complaint are presumed true for purposes of Rule 12(b)(6), and a well-pleaded complaint may proceed even if it appears that recovery is remote and unlikely. *Twombly* at 1965 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The touchstone, however, is the *well-pleaded* complaint.

"A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions," and a "formulaic recitation of the elements of a cause of action with not do." *Id.* (on a motion to dismiss, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation'")(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Actual factual allegations, moreover, must be enough to raise a right to relief "above the speculative level." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216 (3d ed. 2004)). The minimum requirements for pleading viable claims under Rule 8(a)(2), then, are the assertion of actual facts unique to the pleader (rather that the parroting of general standards or statutory elements of a claim) which allow for a plausible (rather than theoretically possible) claim for relief.

Applying this standard here, I must review the Amended Complaints with an eye to the actual facts plead and look to see whether those facts "plausibly support a legal claim for relief." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)(citing *Twombly* at 1965)). The onus is on Plaintiffs to allege such facts and not on the court to divine them. *See id.*

### C.  Municipal liability - § 1981 and § 1983.

While Plaintiffs simply assert that Denver Health on the one hand, and Gabow, Rossman and Alexander in their "individual" and "official" capacities on the other, are collectively liable to them for their injuries under 42 U.S.C. § 1981 and § 1983, there are two fundamental points to be made about these claims. First, claims against Gabow, Rossman and Alexander in their "official capacities" are claims against Denver Health and need not be separately stated;[4] and (2) governmental entities such as Denver Health can be held liable only for their official policies, practices and customs that violate the law, such that claims for discriminatory treatment under § 1981 must be brought under § 1983.[5] Accordingly, Plaintiffs' § 1981 and § 1983 claims against Denver Health and Gabow, Rossman and Alexander in their "official capacities" actually reduce to individual claims under § 1983 based on the existence of an official policy, custom or practice

---

[4]     *Drake v. City and County of Denver*, 953 F. Supp. 1150 (D. Colo.1997)(a suit against a governmental entity employee in his "official capacity" is the same as a suit against the entity, and the naming of both as defendants is in a lawsuit under § 1983 is redundant).

[5]     As stated above, local governmental entities are "persons" answerable for discrimination or other constitutional or civil rights injuries under §§ 1981 and 1983, but may be called to task only for their own "policies" or firmly entrenched "customs" or practices that violate the constitution, not for the unconstitutional acts of their individual employees. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978) *and City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23, 127 (1988). Accordingly, § 1981 claims against an entity (or employees or officers of the entity acting in their "official capacities") may only be brought under § 1983. *Bolden v. City of Topeka*, 441 F.3d 1129, 1135-37 (10th Cir. 2006).

of discrimination at Denver Health pursuant to which each was injured.[6]

From the inception of this litigation, I have admonished counsel regarding the import of *Monell* and its progeny for Plaintiffs' municipal liability claims and have explicitly ordered them to identify "***specific factual allegations*** supporting the conclusory allegations in the First Amended Complaint that Denver Health and/or Defendant Gabow acting in her official capacity made a policy decision, or engaged in a custom or practice of discrimination, for purposes of municipal liability." Order Setting Oral Arg. on Mot. Dismiss (Doc. 22)(emphasis original). I revisited the issue again in my Order Denying Class Certification (Doc. 74), when I found Plaintiffs' allegations insufficient to create an inference of disparate impact necessary to the premise that Denver Health's facially neutral "Talent Plus" or "right person on the bus" employment policies and practices were, in fact, discriminatory as applied. *See* Order at 9-13 (rejecting on that basis Plaintiffs' claims that their individual claims of discriminatory treatment were "typical" of those of the putative class). Despite all warnings, Plaintiffs persist in asserting, without additional factual basis, that "Talent Plus" and "right person on the bus" are intentionally discriminatory employee evaluation systems that rise to the level of official policy, practice or custom of Denver Health for purposes of municipal liability under *Monell*.

Instead, Plaintiffs seize on language from an unpublished decision to argue all that is required to state a municipal liability claim against Denver Health under *Monell* is the assertion that Denver Health officials acted "under color of law" to deprive them of their rights. *See e.g.* Resp. to Defs' Mot Dismiss [Gomez] Am. Compl. (Doc. 47) at 5; Suppl. Br. of Plaintiffs (Doc. 23) at p. 12 (citing *Villalpando v. Denver Health & Hosp. Auth.*, 2003 WL 1870993, at *4 (10th

---

[6] Plaintiffs' § 1981 and § 1983 claims against Defendants' Gabow, Rossman and Alexander in their "individual" capacities will be discussed in the following section.

Cir. 2003)). *Villalpando* stands for no such proposition. *Villalpando* was a medical malpractice action brought by the spouse of a deceased individual who had been treated at Denver Health. While the Court generally observed that Denver Health was "person" capable of suing or being sued under § 1983, it did not reach the issue of municipal liability because the doctors' actions in providing "negligent, willfully indifferent or even reckless medical treatment" did not rise to the level of a constitutional deprivation. 2003 WL 1870993, *3 (while Denver Health is a "person" subject to liability for acts taken "under color of law" for purposes of § 1983, it could not be held liable under *Monell* for an unconstitutional policy, practice or custom for acts that were not themselves unconstitutional).

Alternatively, Plaintiffs quote selectively from various Supreme Court and related circuit court cases establishing the parameters of what constitutes an "official policy," "practice" or "custom" and then allege those actions have taken place. For example, Plaintiffs cite *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) for the proposition that "failure to train or inadequacy of training may serve as a basis for 1983 liability where it amounts to deliberate indifference to the rights of persons" and *Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983) for the proposition that "notice [of discrimination] and a failure to take remedial steps" gives rise to municipal liability under § 1983 (Doc. 23 at 17.) They then allege "defendants were aware some employees were complaining about discrimination [citations omitted], and failed to train [citations omitted], and failed to take remedial steps." *Id.* Even taking Plaintiffs' simplistic (and in the case of *Languirand*, erroneous) statements of the law at face value, their allegations premised on them fail under *Twombly* to rise above formulaic recitations of the same. Plaintiffs repeatedly trot out legal conclusions – Gabow is an "official policy maker" and "implemented a

14

policy of discrimination" – and parade them as factual allegations supporting the existence of a claim for municipal liability.

The only *factual* allegations supporting the existence of an official policy, practice or custom of discrimination are those forming the basis for Plaintiffs' adverse impact allegations that Denver Health's facially neutral "Talent Plus" and "right person on the right bus" employment policies are applied in a manner that favors white employees and harms non-whites. The problem with this theory of municipal liability is multi-fold: (1) with perhaps one exception, Plaintiffs' individual claims are not *premised* on any application of "Talent Plus" or any other neutral employment policy in a discriminatory fashion; and (2) the facts alleged do not, as I concluded in my Order Denying Class Certification, state a viable claim for adverse impact in any event. If Plaintiffs do not claim to have been injured by a discriminatory application of "Talent Plus," and if there would be no actionable claim for such discrimination on the facts alleged in any event, then the question of whether Denver Health should be held liable for having an "official policy, custom or practice" of such discrimination is immaterial.

The Amended Complaints in both the *Atwell* and *Gomez* actions assert highly varied fact situations for each of the eight named Plaintiffs. Only Katie Moore claims to have been subjected to evaluation on her application for rehire under "Talent Plus," and Moore simply contends "Talent Plus" is a racially discriminatory selection process because it is "wholly subjective and not related to objective job-related performance criteria." Am. Compl. ¶ 76. Moore does not allege, nor do any other well-pleaded facts in the Complaint suggest, that managers or human resources personnel applied "Talent Plus" in a "'significantly' discriminatory pattern" to deny non-white applicants such as herself rehire positions at Denver

Health, as would be necessary to state a claim for adverse impact under Title VII. *See* Order (Doc. 74), at 12, n.5 (citing *Thomas v. Metroflight, Inc.*, 814 F.2d 1506, 1509 (10th Cir. 1987). Even then, the conclusory assertion that "Talent Plus" constitutes the "official policy, practice or custom" of Denver Health would not suffice under *Twombly* to establish the necessary factual prerequisite decision for municipal liability.

Plaintiffs do not identify a custom, policy or practice applicable to all of them that would render Denver Health liable under *Monell* for the discrimination each claims to have suffered, and none pleads actual facts giving rise to a plausible inference that such a policy, custom or practice existed. Simply aggregating eight individual claims and calling them the result of a "custom or policy of discrimination" is insufficient, as are all of the other conclusory recitations of *Canton* or similar legal standards as "facts" supporting municipal liability. Plaintiffs' 42 U.S.C. §§ 1981 and 1983 claims against Denver Health or Gabow, Rossman and Alexander in their "official capacities" are therefore DISMISSED.

### D. Individual Liability Claims under §§ 1981, 1983 – Defendants Gabow, Rossman and Alexander.

With the exception of Plaintiff Ridgeway, who alleges Defendant Alexander retaliated against her after she complained Alexander had spoken to her in a "demeaning and rude" fashion, none of the Plaintiffs alleges any personal involvement on the part of Defendants Gabow, Rossman or Alexander in the discriminatory treatment each claims to have suffered at the hands of unnamed supervisors or managers. Instead, these seven Plaintiffs rely on Defendants' supervisory or policy-making status to assert they "adopted" or "implemented" the discriminatory application of "Talent Plus" or were "aware of" and "took no steps to remedy" the discriminatory application of "Talent Plus." The law in this regard is clear, however:

Supervisor status by itself will not support liability for government officials acting in their individual capacities under § 1981 or 1983. *Rizzo v. Good*, 423 U.S. 362, 376 (1976)(applied in *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)). Personal participation is an essential element of any individual liability claim under §§ 1981 or 1983 against a government official. *Mitchell* at 1441 (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)).

In response, Plaintiffs' either allege one or other Defendant "directly participated" in illegal discriminatory conduct by applying "Talent Plus" (*see* Am. Compl. (Gomez) ¶ 102 (Def. Rossman) or "personally violated § 1981 when they took, or approved of others taking, materially adverse employment actions against Plaintiffs on the basis of Plaintiffs' race." Resp. Mot. Dismiss (Doc. 47) at 10. These again are legal conclusions parading as "facts" and as such have no place in a Rule 12(b)(6) analysis under *Twombly*. Plaintiffs also seem to suggest Gabow's status as CEO and "medical director of Denver Health" renders her actions in "the development and implementation of personnel policies and practices, and the selection and supervision of persons assigned to implement her personnel policies and practices" evidence of personal participation for purposes of individual liability under § 1983 or 1981. *See id.* These allegations are indicative of "official capacity" status, if anything, and have no place in the establishment of a basis for holding Gabow personally liable to any one or more of the Plaintiffs based on conduct affirmatively connected to them.

Absent allegations that a Defendant had personal contact with a Plaintiff or was made personally aware of discrimination a particular Plaintiff was suffering, there is not even the foundation of a claim for supervisor liability under *Mitchell* or related authority. *See Benglen v. Zavaras*, 7 F. Supp. 2d 1171, 1173-74 (D. Colo. 1998)(there must be an "affirmative link"

between the violation and the superior's own actions approving or authorizing the violation to state a claim for supervisor liability under § 1983). The lack of an "affirmative link" between the alleged violations suffered by Plaintiffs Atwell, Bradley, Lee, Martinez Hochberg, Gomez, Gordon, or Moore and any actions of Defendants is sufficient ground by itself for dismissing those claims under Rule 12(b)(6).

The sole remaining claim under § 1981 or 1983 is Plaintiff Ridgeway's claim against Defendant Alexander for retaliation. That claim, in turn, suffers from the legal defect identified in *Drake v. City of Fort Collins*, 927 F.2d 1156 (10th Cir. 1991) and *Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992), namely, that employment discrimination claims brought under § 1981 or § 1983 must have a basis "independent of and not created by Title VII." *See Heno v. Spring/United Management Co.*, 208 F.3d 847, 861 (10th Cir. 2000)(Seymour, concurring)(discussing *Drake* and *Notari*). Because Title VII is the sole federal law source of protection from being retaliated against for complaining about racial discrimination, Ridgeway's retaliation claim is actionable only under Title VII and not separately under § 1981. *Compare Drake* at 1162 (§ 1981 or 1983 claim had separate legal basis (equal protection) not created by Title VII and could therefore be maintained). Plaintiffs urge me not to rule on this issue until the United States Supreme Court rules on an appeal of the Seventh Circuit's decision in *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007)(abrogating cases and holding claims for retaliation stemming from discriminatory acts against individual are cognizable under § 1981), *cert. granted* 128 S. Ct. 30, 2007 WL 1243236 (Sept. 25, 2007). I decline to wait. *Drake* and *Notari* remain the law in this circuit and Ridgeway's retaliation claim is actionable, if at all, only under Title VII.

Based on the foregoing, Plaintiffs' individual liability claims against Defendants Gabow, Rossman and Alexander under 42 U.S.C. §§ 1981 or 1983 are DISMISSED and I do not reach their individual defenses of qualified immunity. I note, however, that Plaintiffs' responses to Defendants' arguments regarding qualified immunity at pp. 10-11 of their Response to Defendants' Motion to Dismiss the *Gomez* Complaint (Doc. 47) and p. 4 of their Response to Defendants' Motion to Dismiss the *Atwell* Complaint (Doc. 19) are inapposite and largely unintelligible.

My rulings on the municipal and individual liability claims of Plaintiffs under 42 U.S.C. §§ 1981 and 1983 effectively dispose of the *Gomez* Plaintiffs' claims in their entirety. All that remains, then, are the Title VII and state law claims of Plaintiffs Atwell, Bradley, Lee, and Martinez Hochberg in 06-cv-2262.

### E. Plaintiffs' Title VII and CADA[7] Claims against Denver Health.

Title VII makes it unlawful for an employer to

fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). Each of the individual *Atwell* Plaintiffs claims she was discriminated against on the basis of race or national origin.

1. The Title VII and CADA claims of Bradley, Lee and Hochberg.

A plaintiff may not bring a Title VII action based upon claims that were not part of a

---

[7] The Colorado Anti-Discrimination Act (CADA), Colo. Rev. Stat. § 24-34-402 is a state analog to various federal employment discrimination laws prohibiting discriminatory or unfair employment practices including race discrimination.

timely-filed EEOC charge for which plaintiff has received a right-to-sue letter. *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A timely EEOC charge and right-to-sue letter is also a necessary prerequisite to filing suit under CADA. Colo. Rev. Stat. § 24-34-403. The requirement is not simply a bureaucratic exercise. The purpose of an EEOC charge is not only to provide the employer with notice of the claims against it, but to provide the EEOC with an opportunity to investigate and conciliate the claim before litigation ensues. *See Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997). Plaintiffs concede in this case that only Atwell had filed the required charge and received her right-to-sue letter at the time this action was filed, but urged me to "postpone" ruling on the issue because Plaintiffs Bradley, Lee and Hochberg had "timely" filed their charges and were simply awaiting letters of their own.[8]

In the alternative, Bradley, Lee and Martinez Hochberg ask to be allowed to "piggyback" on Atwell's right-to-sue letter, referring to the exception in multi-plaintiff cases to the jurisdictional prerequisite of filing individual charges where the non-filers are similarly situated and the original EEOC notice gives the employer notice of the collective nature of the charge. *See Thiessen v. General Electric*, 267 F.3d 1095, 1111 (10th Cir. 2001). The single filing ("piggybacking") doctrine is inapplicable here, where Plaintiffs' claims are highly individualized and where Atwell's charge of discrimination – in which Atwell describes being harrassed, losing her office while out on medical leave and being subjected to unwelcome supervision by a nurse

---

[8] This assertion was apparently less than forthcoming. A review of notes submitted by counsel to support their compliance with the investigatory requirements of Rule 11 suggests counsel knew Martinez Hochberg had yet to file even an initial charge with the EEOC when she was added as a Plaintiff in the Amended Complaint. *See* Intake Questionnaire (Doc. 26-25). To date, no other right-to-sue letters have been filed or otherwise submitted on behalf of Bradley, Lee or Martinez Hochberg.

– cannot be said to have provided Denver Health with notice of any claims beyond Atwell's. The Title VII and CADA claims of Bradley, Lee and Hochberg are DISMISSED for failure to exhaust administrative remedies.

2. <u>Atwell's Title VII and CADA Claims</u>.

<em>Discriminatory Treatment.</em>

While Atwell's allegations of discriminatory treatment and retaliation have only the most tenuous nexus to her race (the majority of Atwell's allegations tend to link adverse employment actions to her surgeries and resulting physical limitations – as in her inability to endure CPR training – not any race-based animus) out of an abundance of caution, and because I think Ms. Atwell has not been well-served by her counsel in their attempt to leverage her original claim into an unsupportable class action, I will allow her Title VII and CADA claims to proceed. Defendants arguments regarding the insufficiency of Atwell's constructive discharge allegations are not without merit, but I disagree her allegations are insufficient to establish at least some adverse employment action on the basis of race. Atwell is a member of a protected class who alleges a series of downturns, negative reviews, and mistreatment at Denver Health which, taken as true, may permit an inference of discriminatory treatment. While I am inclined to agree that Atwell's facts, as alleged, do not give rise to a plausible constructive discharge claim, I stop short of so ruling at this time. Atwell is advised to consider carefully the relative costs and benefits of proceeding with this claim, however, as an inability ultimately to prove constructive discharge will affect the value of her claim.

Defendants' Motion to Dismiss Atwell's Title VII and CADA claims for discriminatory treatment is DENIED.

*Retaliation.*

Defendants urge me to dismiss Atwell's Title VII retaliation claim on grounds her administrative EEOC Charge fails to mention retaliation. While technically correct, I find the statements made in the Charge (Doc. 17-3) sufficient to put Defendants on notice of the claim and deny the request.

### F. The Remaining State Law Claim.

In my May 9, 2007 Order setting oral argument on Defendants' Motion to Dismiss the *Atwell* Amended Complaint and ordering Plaintiffs' to show cause for several of their exaggerated or patently improper assertions, I also directed Plaintiffs' counsel to provide authority for Plaintiffs assertion of a private cause of action under Colo. Rev. State. § 25-29-107, part of the statute establishing and governing the administration of the Denver Health and Hospital Authority. In their midnight brief filed on the eve of oral argument (Doc. 23), Plaintiffs stated they were not asserting a claim under § 25-29-107 "against Dr. Gabow" (Doc. 23, p. 20), suggesting they were asserting such a claim against Denver Health. The brief then states "Because Dr. Atwell was a city employee, we believed it reasonable to reference this statute. The reference was not intended to be read as a claim separate and distinct from claims pursuant to C.R.S. § 24-34-402 [CADA]." *Id.*

Compounding the confusion, Plaintiffs allege in paragraphs 2, 7, and 151 of their Amended Complaint that Defendants "illegally discriminated against them in violation of § 25-29-107." Defendants' notified Plaintiffs in their original Motion to Dismiss of their view that § 25-29-107 provided no private cause of action against any of the Defendants in this case, and I ordered Plaintiffs in my May 9 Order to state why that claim (among others) was viable or

consider withdrawing it in the face of Rule 11 sanctions.  Plaintiffs ignored the admonition and

on the eve of oral argument, submitted a brief "explaining" why they "thought" it was reasonable

to include it.  To this date, Plaintiffs have never withdrawn the claim.

### III.  RULING AND SANCTIONS.

On the issue of sanctions, I have given Plaintiffs' counsel several opportunities to tailor

their claims, buttress them with actual factual allegations and, most importantly, to explain their

actions in the wake of Defendants' Motion to Dismiss Patricia Atwell's original, individual

Complaint to turn Ms. Atwell's Title VII action into a large-scale civil rights class action seeking

awards of compensatory and punitive damages, attorney fees and interest on behalf of "50-250"

individuals.  In my May 9 Order (Doc. 22) I specifically ordered counsel to "certify, under Fed.

R. Civ. P. Rule 11, the precise nature of the investigation and legal research conducted in

transforming Ms. Atwell's original employment discrimination Complaint  in this case into a

class action on behalf of between "50" and "200" non-white employees of Denver Health –

based on a representation that Ms. Atwell (the only African-American psychologist at Denver

Health during the relevant time period) wished to "clarify" certain aspects of her Complaint in

"response" to Defendants' original Motion to Dismiss her claims." Order at 2.  Lead counsel

Anne Sulton produced no certification in response to this admonition.  Co-counsel Gregory Hall

produced several pages of entries he represented he typed from handwritten notes documenting

meetings with Bradley, Lee and Hochberg, as well as two or three unnamed other past or present

Denver Health employees leading up to the filing of the Amended Complaint.  (Doc. 27.)  The

authenticity of these notes was neither verified nor certified, and no affidavit swearing to their

veracity was included.  When I ordered the original notes be produced, counsel took the issue up

to the Tenth Circuit on mandamus.

After the Tenth Circuit ordered all but those notes of meetings with nonparties who declined their disclosure to be produced, Hall produced notes, time sheets and telephone logs, under seal, supposedly corroborating the notes in Doc. 27 and providing additional documentation of his Rule 11 efforts with respect to amending of Atwell's Complaint.

The "timesheets" produced under seal are identical in format to the entries in Doc. 27. They are individual type-written entries, one per page, on blank sheets of paper and are not actual time sheets or billing statements. In any event, they confirm a series of three meetings wherein the subject of a "class action" was "discussed," and then a series of entries from the run-up to the February 13, 2007 Amended Complaint filing date documenting "legal research" on class actions. These entries consist either of string cites to case law (February 9) or general references to "research" involving the Manual on Complex Litigation and Newberg on Class Actions (February 10 & 11), and efforts on February 12 and 13 to "evaluate" the Amended Complaint "to ensure we have met our pleading burdens under Rules 8, 12 & 23" and "[m]ake sure that each legal claims [sic] is supported by the facts alleged." *See* Affid. of Attorney Gregory A. Hall, Ex. 3 (filed under seal on Dec. 6, 2007). Nothing more is revealed.

Lead Counsel Anne Sulton again filed nothing certifying what efforts she undertook before filing the Amended Complaint.

In considering the imposition of sanctions under Rule 11, I am mindful of the legal standards to be applied and the procedural safeguards to which counsel are entitled before such sanctions are imposed under *White v. General Motors Corp., Inc.*, 908 F.2d 675 (10th Cir. 1990). The standard is one of objective reasonableness, and counsel must be given notice of the specific

conduct that is subject to sanctions.

In my May 9, 2007 Order setting Defendants' Motion to Dismiss for oral argument (Doc. 22), I put Plaintiffs' counsel on notice of my Rule 11 concerns regarding virtually all of their class claims and contentions, specifically including their decision to convert Dr. Atwell's original Complaint into a class action. *See* Order at 2. At the end of my Order, I provided the following notice:

> Counsel for Plaintiffs should consider this Order part of their notice under Fed. R. Civ. P. 11(c)(1)(A)'s "safe harbor" provision and give thought to withdrawing some or all of their offending claims or contentions. If, after oral argument, I am persuaded that one or more of Plaintiffs' claims were frivolous or groundless when filed, or that counsel otherwise failed to comply with the principles and purposes of Rule 11 either in signing the original Complaint on behalf of Ms. Atwell or in ratcheting up the ante by converting Ms. Atwell's claims into a class action in "response" to Defendants' original Motion to Dismiss, I may issue a comprehensive order to show cause under Rule 11(c)(1)(A), *see Hutchingson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000), and/or impose sanctions under 28 U.S.C. § 1927 without further notice.

Order (Doc. 22) at pp. 4-5. None of the documents or records submitted purports to certify any efforts made with regard to Plaintiffs' 42 U.S.C. §§ 1981 or 1983 claims, the state claims, or the effect of their clients' failure to secure EEOC right-to-sue letters before filing Title VII and CADA claims on their behalf. There are therefore multiple grounds on which to sanction Plaintiffs' counsel under the notice given. The most egregious of these, in my view however, is counsel's actions in effectively holding Ms. Atwell's claims hostage to a hasty plan to up the ante against Denver Health by turning her individual action into a large-scale civil rights class action. I find the actions of counsel in this regard untenable, unreasonable and unsupported by the evidence submitted that they engaged in a good faith investigation of the facts supporting such an amendment or performed even the modicum of legal research into its viability.

In accordance with Fed. R. Civ. P. Rule 11(c)(1)(B), counsel Anne Sulton and Greg Hall are ORDERED TO SHOW CAUSE, in writing, why they should not be sanctioned for violating the terms of Rule 11(b) in the preparation and filing of the Amended Complaint in Civil Action No. 06-cv-2262-JLK on February 13, 2007.. If, after Plaintiffs' return, it is determined that any provision of subdivision (b) has been violated, I will consider the imposition of sanctions up to and including the assessment against counsel of Defendants' attorney fees incurred defending against the class action claims of Plaintiffs Atwell, Bradley, Lee and Martinez Hochberg. Plaintiffs' return on this Order to Show Cause shall be due one or before April 16, 2008.

*Defendants' Motion to Dismiss First Amended Complaint* in 06-cv-2262-JLK (*Atwell*) (Doc. 17) is DENIED as to Plaintiff Renee Atwell's Title VII and CADA claims against Defendant Denver Health only and is GRANTED in all other respects. *Defendants' Motion to Dismiss Amended Complaint Filed by Plaintiffs Gomez, Ridgeway, Gordon, and Moore in Consolidated Case 07-cv-2063* (Doc. 45) is GRANTED in its entirety.

BY THE COURT:

Dated March 31, 2008.                  *s/John L. Kane*
                                         SENIOR U.S. DISTRICT JUDGE